## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| **James S. Cotsis** and | ) | Chapter 13 |
| | ) | |
| **Wendy L. Cotsis**, | ) | Case No.: 15-20588 |
| | ) | |
| Debtors. | ) | |

### MEMORANDUM OF DECISION

This matter is before me on the objection of James S. Cotsis and Wendy L. Cotsis (the "Debtors") to the September 14, 2016 Notice of Postpetition Mortgage Fees, Expenses and Charges (the "Postpetition Notice") filed by U.S. Bank National Association, as trustee for the registered holders of Aegis Asset Backed Securities Trust, Mortgage Pass-Through Certificates, Series 2004 – 2 ("U.S. Bank"). For the reasons set forth below, I overrule this objection without prejudice to the Debtors' option to file a motion to determine fees, expenses, or charges pursuant to Federal Rule of Bankruptcy Procedure ("Fed. R. Bankr. P.") 3002.1(e).

### I. Facts.

In 2004, the Debtors borrowed $168,300 from Aegis Funding Corporation. This loan was memorialized in a promissory noted dated February 13, 2004 (the "Note") and was secured by a first mortgage on the Debtors' principal residence (the "Mortgage"). See U.S. Bank's Proof of Claim ("POC") dated July 26, 2016 (POC No.: 7-1).

More than eleven years later, the Debtors filed for bankruptcy relief pursuant to chapter 13 of the United States Bankruptcy Code (Docket Entry ("DE") 1). U.S. Bank filed a proof of claim maintaining that it held a secured claim in the amount of $196,842.97 (POC No.: 7-1). Pursuant to Fed. R. Bankr. P. 3002.1, U.S. Bank also filed the Postpetition Notice which

itemized that $900 of attorney's fees were incurred by U.S. Bank on the Debtors' mortgage account after the petition was filed.[1]

On September 22, 2016, the Debtors objected to the Postpetition Notice solely on the grounds that U.S. Bank failed to comply with District of Maine Local Bankruptcy Rule ("D. Me. LBR") 2016-1(a)(3) and thus the fees sought should be denied (DE 63). They did not object to U.S. Bank's POC No.: 7-1; they did not file a motion to determine fees, expenses, or charges pursuant to Fed. R. Bankr. P. 3002.1(e); nor did they challenge the necessity of the work performed or the reasonableness of the fees charged. U.S. Bank argued that the Debtors' objection should be overruled and asserted that Fed. R. Bankr. P. 2016 and D. Me. LBR 2016-1(a)(3) do not apply as U.S. Bank is not a professional retained by the Debtors or their estate (DE 65). The parties filed additional papers (see DEs 66 and 69) and, at a hearing on December 7, 2016, requested that I decide the issue based upon their submissions.

## II. Discussion.

The answer to this dispute lies in whether U.S. Bank is a professional for which the 2016 rules apply. I conclude it is not. Fed. R. Bankr. P. 2016 and D. Me. LBR 2016-1(a)(3) create compliance guidelines that professionals who render services or incur expenses for debtors or their estates must follow in order to be compensated or reimbursed. If U.S. Bank had been retained by the Debtors or their estate in accordance with §327 and wished to be paid for services

---

[1] Exhibit A attached to the Postpetition Notice explains that the fees were incurred on April 5, 2016 and were for the "[r]eview of Plan and Notice of Appearance" ($400) and for "Objection to Confirmation" ($500). Exhibit A does not provide the information required by F.R.Bankr.P. 2016(a) which requires: "An entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested. An application for compensation shall include a statement as to what payments have theretofore been made or promised to the applicant for services rendered or to be rendered in any capacity whatsoever in connection with the case, the source of the compensation so paid or promised, whether any compensation previously received has been shared and whether an agreement or understanding exists between the applicant and any other entity for the sharing of compensation received or to be received for services rendered in or in connection with the case, and the particulars of any sharing of compensation or agreement or understanding therefor . . ."

rendered or expenses incurred for such work, it would be required to satisfy the federal and local Rule 2016 requirements before receiving compensation. These preconditions apply even though U.S. Bank is a creditor.[2]

But those requirements do not pertain to creditors whose contractual arrangement with debtors permit the recovery of attorneys' fees or expenses. By filing the Postpetition Notice, U.S. Bank was complying with the strictures of Fed. R. Bankr. P. 3002.1 which was adopted to, among other things, ensure that holders of claims secured by the principal residences of debtors provide debtors and trustees with notice of "all fees all fees, expenses, or charges (1) that were incurred in connection with the claim after the bankruptcy case was filed, and (2) that the holder asserts are recoverable against the debtor or against the debtor's principal residence." Fed. R. Bankr. P. 3002.1 (c). U.S. Bank used the Postpetition Notice to explain, as required, the scope of its claim, not to seek compensation from the Debtors for legal services rendered for them or their estate. This distinction is evident elsewhere in the Code. For example, §506(b) specifically permits a secured creditor's claim to include reasonable fees provided for under the agreement upon which the claim is made.[3] In U.S. Bank's case, eleven years before filing for bankruptcy relief, the Debtors contracted with U.S. Bank to permit it to include the attorneys' fees it incurred in connection with the Debtors' default of their obligations to U.S. Bank as part of its claim. See POC 7-1, pages 30 and 42(¶ 6 of the Note and ¶ 14 of the Mortgage). The Debtors' argument

---

[2] "The requirements of this subdivision shall apply to an application for compensation for services rendered by an attorney or accountant even though the application is filed by a creditor or other entity." Fed. R. Bankr. P. 2016(a).

[3] "To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose." 11 U.S.C. § 506(b).

that Fed. R. Bankr. P. 2016 and D. Me. LBR 2016-1(a)(3) are applicable in this context misses this crucial distinction.

Further, the cases cited by the Debtors are distinguishable. The Debtors cite three cases in support of their argument: In re Campbell, 402 B.R. 453 (Banker. D. Mass. 2009); In re Tate, 253 B.R. 653 (Bankr. W.D.N.C. 2000); and In re Jack Kline Co., Inc., 440 B.R. 712 (Bankr. S.D. Tex. 2010). The primary issues before the Campbell court were whether the attorneys' fees incurred by the creditor in connection with a partition action, as distinguished from collection actions incidental to the debtor's obligations under a promissory note, sought by the creditor pursuant to the terms of a mortgage in connection with a partition action (1) were related to the foreclosure of the mortgage and (2) were reasonable. In re Campbell, 402 B.R. at 461-462. The creditor in Tate, unlike U.S. Bank here, did not rely on a pre-bankruptcy contract for the basis of claiming entitlement to a $125 "bankruptcy fee" from each debtor. In re Tate, 253 B.R. at 664-669. Finally, Jack Kline Co. addressed a chapter 7 trustee's effort to surcharge an over-secured creditor's collateral because of the creditor's misconduct (collecting postpetition default interest rate on claim in violation of 506(c)). In re Jack Kline Co., Inc., 440 B.R. at 732–33. None of these cases is controlling, all pre-date the 2011 enactment of Rule 3002.1, and their holdings are either distinguishable from the proposition asserted here by the Debtors or unpersuasive.

Further, Rule 3002.1 provides a procedural vehicle by which the Debtors could object to the fees sought by U.S. Bank. "On motion of the debtor or trustee filed within one year after service of a notice under subdivision (c) of this rule, the court shall, after notice and hearing, determine whether payment of any claimed fee, expense, or charge is required by the underlying agreement and applicable nonbankruptcy law to cure a default or maintain payments in accordance with § 1322(b)(5) of the Code." Fed. R. Bankr. P. 3002.1(e). If Debtors do not

believe that U.S. Bank's proffer contained on pages 2 and 3 of its reply (DE 69) adequately supports the reasonableness of its fees, they arguably retain the option of challenging the fees set forth in the Postpetition Notice.  See, <u>In re Lighty,</u> 513 B.R. 489 (Bankr. D.S.C. 2014); <u>In re Pittman</u>, 2015 WL 1262837, at *1 (Bankr. D.S.C. Mar. 16, 2015); <u>In re Hale</u>, 2015 WL 1263255 (Bankr. D.S.C. Mar. 16, 2015).

### III.  Conclusion.

For the foregoing reasons, the Debtors' objection to U.S. Bank's Postpetition Notice is overruled.


Dated:  February 24, 2017                        /s/ Peter G. Cary
                                                 Judge Peter G. Cary
                                                 United States Bankruptcy Court